# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| NANCY H. MILLS | CIVIL ACTION |
| --- | --- |
| v. | NO. 18-4034 |
| UNITED STATES OF AMERICA | |

Baylson, J.                                                                               September 19, 2019

## MEMORANDUM RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. Introduction

Nancy H. Mills broke her leg on April 15, 2017 after falling in a United States Post Office located in Doylestown, Pennsylvania. She has since brought a premises liability negligence action against the United States ("the Government") in which she alleges that her fall was caused by a dangerously-laid-out rug. The Government has moved for summary judgment in its favor on her claim. For the reasons that follow, the Government's motion is DENIED.

The parties do not dispute that Mills fell in the Doylestown Post Office on April 19, 2017, or that Mills's April 19, 2017 fall injured her. They are also in accord as to the basic legal standard to be applied. They agree that Mills was a business invitee of the Doylestown Post Office to whom the Post Office owed a duty of protection from foreseeable harm. Thomas v. Family Dollar Stores, No. 17-cv-4989, 2018 WL 6044931, at *2 (E.D. Pa. Nov. 19, 2018). They also agree that the Doylestown Post Office breached that duty of care only if a dangerous condition existed on the premises and it:

    (a) knew or by the exercise of reasonable care could have discovered (i.e., had actual or constructive notice of) the condition and should have realized that it

>    involves an unreasonable risk of harm to its invitees;
>
> (b) should have expected that its invitees will not discover or realize the danger or will fail to protect them against it; and
>
> (c) failed to exercise reasonable care to protect its invitees against the danger.

See Larkin v. Super Fresh Food Markets, Inc., 291 F. App'x 483, 484 (3d Cir. 2008). The parties here dispute whether the Government has shown that it did not breach that duty of care as a matter of law. They also dispute whether any breach actually caused Mills's injuries.

In its Memorandum of Law in Support of its Motion for Summary Judgment ("Def. SJ Br.," ECF 15.1), the Government contends that there is no evidence that the rug itself was negligently positioned or laid out on the day in question; that she cannot establish that she actually tripped on the rug; and that she cannot overcome its expert report that the rug comported with pedestrian safety standards.[1] Def. SJ Br. at 1–2.

In her Response Memorandum ("Pl. Opp. Br.," ECF 16.2), Mills counters that the Doylestown Post Office staff's testimony establishes that they were aware that the rugs often did not lie flat and that the Post Office did not take any protective measures despite being aware of this risk.[2] Pl.

---

[1] The Government argues that because Mills "cannot point to genuine, specific evidence of causation . . . she appears at most to be relying upon a *res ipsa loquitur* theory," Def. SJ Br. at 10, and goes on to rebut the application of *res ipsa loquitur*, id. at 10–12. Because the Court concludes that Mills's claim can survive summary judgment without reliance on a *res ipsa loquitur* theory, it will not address the application of *res ipsa loquitur* to this case.

[2] Apparent misunderstandings among counsel have also produced a dispute about whether it is proper for the Court to consider the expert report. See Pl. Opp. Br. at 6–7; Defendant's Reply Brief ("Def. Rep. Br.," ECF 17) at 1–2; Plaintiff's Surreply (ECF 18) at 1–2. In reviewing this motion for summary judgment, this Court is mindful that Plaintiff's counsel might have objected to the use of the report or supplied a competing report had those misunderstandings not occurred. However, the dispute is immaterial: the Court is denying summary judgment even in the face of

Opp. Br. at 4–5.

The Government's Reply Brief maintains that Mills has not rebutted the Government's expert report and argues that the Defendant's argument about protective measures is based on evidence from dissimilar locales. Def. Rep. Br. at 2–3.

**II. Discussion**

    **a. Breach of the Duty of Care**

The Government argues that, per its expert report, the rugs it uses were plainly safe on the day in question, precluding summary judgment. Def. SJ Br. at 7. The rug's edge's thickness around its edge is one-eighth of an inch. Id. Ex. C at 10. Relevant safety standards call for changes in walking surfaces' vertical elevations to be no more than one-quarter of an inch tall. Id. The expert report further states that, based on photographs taken on April 17, the rug's "edge laid flat and flush against the floor" near where Mills supposedly fell. Id. at 9. However, the record contains some ambiguity about where and how Mills fell. See id. Ex. A. ("Mills Dep.") at 18:9-23, 19:15–19 (Mills fell only onto her right knee and did not move after); id. Ex. D ("Paciti Dep.") at 6:12–13 (custodian found Mills lying on the rug); Pl. Opp. Br. Ex. A ("Brogan Dep.") 10:13-17, Ex. P-1 (supervisor found Mills sitting on the lobby floor near the rug). It is also difficult to draw indisputable conclusions about the state of the edges of the rug at the time of Mills's fall based on the photographs the expert reviewed. See Def. SJ Br. Ex. B; Brogan Dep. Exs. P-3, P-4. The rug is charcoal-colored, Def. SJ Br. Ex. C at 10, and the photographs' quality is poor. The

---

the Government's expert report, because expert reports are not generally allowed to show that "no genuine dispute as to any material fact" exists, see Fed. R. Civ. P. 56(a).

3

photographs contain several areas of blurring or shadowing along the edges of the rug which could reflect the rug not sitting flush. See Def. SJ Br. Ex. B; Brogan Dep. Exs. P-3, P-4. Although Mills noticed nothing wrong with the rugs between the time she entered the Doylestown Post Office and the time she tripped. See Mills Dep. at 16:9-20. However, the rugs regularly lay amiss. See Mills Dep. at 28:10–29:2; Paciti Dep. at 9:5-21, 11:16–12:2. Mills's testimony could mean that she saw the rug as no more uneven—i.e., hazardous—than normal. Moreover, the rug's dark color may have concealed slight bumps along the edge from casual inspection. A reasonable juror viewing all of the evidence could find that, on April 19, 2017, portions of the rug exceeded the quarter-inch height that the Government's expert report declares safe.

A reasonable juror could find that the Government had actual notice that the rugs could be hazardous. "[W]here the condition is one which the owner knows has frequently recurred, the jury may properly find that the owner had actual notice of the condition." Moultrey v. Great A&P Tea Co., 422 A.2d 593, 596 (Pa. Super. 1980).[3] The rugs lying unevenly was hardly unprecedented and continues to the present day. See Mills Dep. at 28:10–29:2; Paciti Dep. at 9:5-21, 11:16–12:2; cf. Brogan Dep. at 26:18-22 ("Q: . . . So they're supposed to lay flat; am I not correct? And that's what they do, they lay flat? . . . The witness: It's a rug. They lay like a rug."). A Doylestown Post Office custodian recognizes that the rugs' unevenness can be hazardous: he sometimes rearranges the rugs or even declines to lay them out if, in his judgment, they might

---

[3] The Government cites Larkin v. Super Fresh Food Markets, Inc., 291 F. App'x at 483, among other cases, to demonstrate that it could not have had constructive notice of any hazardous condition. See Def. SJ Br. at 8–10. Because a reasonable juror could find that the Government had actual notice, constructive notice is not at issue here.

4

jeopardize "the safety of the customers." See Paciti Dep. at 9:5-21, 11:16–12:2, 12:12–13:24. The rugs' lying unevenly, therefore, is a condition which the Government knows has frequently recurred such that a reasonable juror could find the Government had actual notice.

The Government also disputes Mills's contention that it did not use reasonable care. The Court is not convinced that the custodian's daily exercise of his judgment about whether and how to lay out the mats demonstrates that the Government exercised reasonable care so as to defeat summary judgment.

### b. Causation

The Government directs the Court's attention to evidence of Mills's supposed route through the Doylestown Post Office, and position before and after falling, that it contends is irreconcilable with Mills's claim that she tripped on the rug. For example, it contends that the number of steps she testified that she took before she fell is inconsistent with the distance she would have had to have traveled to reach the rug. Def. SJ Br. at 7. However, Mills testified that her memory of the accident is limited in certain respects. E.g., Mills Dep. at 19:3-20, 20:4–10. A reasonable juror could overlook some imperfections in Mills's memory or understanding of the accident given the routine nature of the activity she was engaged in just prior to her fall, and the serious and painful nature of her injury. For another example, the Government argues that Mills's "most direct path" through the Doylestown Post Office "would not have taken her reasonably close to the [rug]." Def. SJ Br. at 7. That argument is undermined by testimony and documentary evidence that place Mills on or near the rug following the accident. See Paciti Dep. at 6:12–13; Brogan Dep. Ex. P-1. In any event, this Court will not rule that a plaintiff's route must fall along the most direct path between two points to defeat summary judgment.

5

The Government has not shown that no reasonable juror, viewing all disputed facts in the light most favorable to Mills, could find that Mills tripped on the rug.

**III.    Conclusion**

Because the record shows that the rugs may have been hazardous on the day in question, that the Government may have been aware that the rugs could be hazardous, and that Mills could have tripped on one of the rugs, the Government's motion for summary judgment will be denied.

An appropriate Order follows.

O:\CIVIL 18\18-4034 Mills v United States\18cv4034 Memo re MSJ.docx